IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL M. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 4962 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security | ) | |
| | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Daniel Evans' (Evans) motion for summary judgment and Defendant Social Security Administration's (SSA) motion for summary judgment. For the reasons stated below, SSA's motion is denied and Evans' motion is granted in part. This matter is remanded to SSA for further proceedings consistent with this opinion.

## BACKGROUND

Evans claims to suffer from degenerative disc disease in the lumbar and cervical spines, and degenerative joint disease in the knees and hips. On November

1

20, 2012, Evans filed applications for Disability Insurance Benefits and Supplemental Security Income. The claims were denied initially and denied again on reconsideration. Evans then appeared in a hearing before an Administrative Law Judge (ALJ), and on February 13, 2015, the ALJ issued a decision finding that Evans was not disabled. The Appeals Council denied Evans' request for review. On May 4, 2016, Evans filed the instant appeal. Evans has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA seeks to have the ALJ's decision affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

# DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work," and "[i]f the applicant can engage in other work, he is not disabled." *Id.* In the instant appeal Evans argues: (1) that the ALJ did not properly evaluate Evans' RFC, (2) that the ALJ did not properly evaluate whether Evans' impairments medically equaled a listed impairment, and (3) that the ALJ did not properly evaluate Evans' alleged limitations.

I. Residual Functional Capacity Determination

Evans argues that the ALJ erred in determining Evans' RFC. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence"); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010)(stating that "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment").

The ALJ concluded that Evans "has the residual functional capacity to perform light work," and that Evans "can lift and carry 20 pounds occasionally and 10 pounds frequently, with no additional limitation in his ability to push or pull." (AR 14). The ALJ also concluded that Evans "would be able to stand and walk for about six hours in an eight-hour workday, and would be able to sit for about six hours in an eight-hour workday, with normal rest periods," and that Evans "would only be able to be on his feet standing and walking for about one hour at a time, and he would be able

to sit for about two hours at a time." (AR 14). The ALJ further concluded that Evans "requires a cane for ambulation, but can walk more than 50 feet without a cane," that Evans "is unable to work at heights, climb ladders, or frequently negotiate stairs," that Evans "may only occasionally crouch, kneel, or crawl," and that Evans "should avoid operation of moving or dangerous machinery." (AR 14).

The ALJ stated that he made the RFC determination "[a]fter careful consideration of the entire record," and reiterated certain parts of the record. (AR 14). An ALJ must do more than provide conclusory statements and must build a logical bridge from the record to her conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)(stating that "[i]n rendering a decision, an ALJ must build a logical bridge from the evidence to h[er] conclusion")(internal quotations omitted)(quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). It is true that the ALJ need not point to every portion of the record. *See id.* (stating that the ALJ "need not provide a complete written evaluation of every piece of testimony and evidence"). However, in this case, the ALJ failed to adequately explain how the record supported his RFC finding, which was more restrictive than that found by the state agency physicians. The Seventh Circuit has explained that "an ALJ may not rely on a hunch" in place of evidentiary support. *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)(indicating that "a claimant is entitled to a decision

based on the record rather than on a hunch"). In addition, although the ALJ assessed Evans' physical limitations along with certain references to the record, the ALJ failed to address certain portions of the record such as Evans' limitations in reaching. The record reflects that Dr. Madala, a State agency doctor, opined that Evans would be limited in reaching forward, laterally and overhead with both arms. (AR 100).

Evans also argues that the ALJ erred in independently interpreting the results of an MRI, failing to seek an updated opinion from a medical expert, and failing to consider the worsening of Evans' condition. The Seventh Circuit has explained that when significant new or potentially decisive medical evidence, such as an MRI, is submitted after the last agency review, this evidence should be evaluated by a medical expert prior to the ALJ making a determination. *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The record reflects that in assessing Evans' RFC, the ALJ did discuss the results of an October 2014 MRI. (AR 20). However, this MRI was submitted after the state agency physicians reviewed the record. The ALJ, in assessing Evans' RFC without seeking an updated opinion by a medical expert, effectively played doctor. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)(explaining that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). The ALJ was not qualified to independently interpret MRI results and subsequently determine corresponding

limitations. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)(explaining that "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves"). The ALJ found that Evans had the same RFC for the entire time period at issue. However, without an updated opinion by a medical expert, the ALJ did not properly consider whether Evans' condition had worsened over time.

Although the ALJ did not adequately address the RFC determination, Evans has not pointed to sufficient evidence in the record to support any particular finding in his favor as to his RFC at this juncture. Evans has shown that a remand is warranted to allow the ALJ to make a new RFC determination. On remand, the ALJ should consider all evidence material to the RFC determination, including reaching limitations, and should refrain from making independent medical findings or conclusions and should seek updated medical opinions as to the new MRI evidence.

II. Medical Equivalence

Evans also argues that an updated medical opinion was also necessary to determine whether the new evidence supported a finding that Evans' impairments were equal in severity to a listed impairment. A claimant's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the

7

criteria of any listed impairment. 20 CFR §404.1526. A finding that a claimant equals a listing requires a medical opinion and is not a determination that an ALJ makes independently. *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004)(explaining that "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue"). While an ALJ is not required to seek an updated medical opinion on each piece of new evidence, an ALJ must seek an updated opinion when, in the ALJ's view, the new evidence may lead to a conclusion that the claimant's impairments are equal in severity to a listed impairment. The ALJ concluded that Evans' impairment did not meet or equal a listing. (AR 13). However, no reviewing doctor had seen the updated 2014 MRI and therefore, their opinions did not accurately reflect Evans' condition at the time of the hearing. The 2014 MRI showed a compromise of the nerve root, which was not demonstrated in earlier evidence. (AR 518, 738). Evans also had additional significant impairments such as arthritis in his knees, hips and cervical spine. (AR 12-13). Since Evans' condition satisfied some of the criteria for a listed impairment and he had additional significant impairments, a medical expert could have concluded that the combination of impairments was equal in severity to a listed impairment.

III. Evaluation of Alleged Limitations

Evans argues that the ALJ improperly evaluated his credibility as to his alleged limitations by mischaracterizing treatment history, failing to address the need to lie down during the day, and failing to discuss work history. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record"); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)(stating that "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results"). The ALJ found that while the evidence supported Evans' allegations of pain to some extent, that his course of treatment and clinical examinations were not consistent with the level of pain described. (AR 15). The ALJ stated that he did not find Evans' allegations fully credible because "if [his] pain were as severe and persistent as he has alleged, then his course of treatment would have shown greater focus on recovery, and less focus on obtaining narcotic pain relievers." (AR 15). The ALJ discussed Evans' history of steroid injections, contending that Evans did not persist with this treatment and "even switched providers after they put up barriers to his desire for narcotic pain medications,"

9

concluding that Evans' "course of treatment was not consistent with his level of pain." (AR 15). However, the record reflects Evans attempted several different methods of pain relief including steroid injections, physical therapy and a scheduled procedure to freeze nerves in his back. (AR 76-77). In the instant action, the ALJ failed to explain how the record reflects no persistent treatment for pain. The ALJ also failed to explain how examination findings were inconsistent with Evans' pain allegations. An ALJ cannot "disregard an applicant's subjective complaints of pain simply because they are not fully supported by objective medical evidence," but "a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). The ALJ thus failed to adequately explain his decision in this regard and build the necessary connection to his conclusion. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014)(explaining that "[i]n reaching its decision, the ALJ must build a logical bridge from the evidence to his conclusion"). On remand, the ALJ should review the record and reassess whether Evans' subjective complaints as to pain were exaggerated or not and then make a proper credibility determination.

Evans also argues that the ALJ failed to discuss his need to lie down. The ALJ states that "while [Evans] indicated that he could sit for only thirty minutes, he

sat in the hearing for a period longer than that." (AR 15). However, the record shows that after sitting for approximately one hour, Evans complained of back spasms and indicated his need to lay down for a few minutes. (AR 78). Such a limitation would have been relevant particularly since the vocational expert testified that "lying down generally at the workplace is frowned up[on]" and "if you routinely laid down during the day, I think they would terminate you." (AR 95). On remand, the ALJ should conduct the necessary inquiry regarding such matters. If the ALJ relies upon his first-hand observations, the ALJ should properly support his ultimate credibility determination and explain how the ability to participate in the hearing was contrary to Evans' claimed symptoms.

Evans further argues that the ALJ erred in failing to discuss his long and consistent work history as well as his previous attempt to work on an assembly line despite his impairments. While Evans is correct that a good work history record will help a claimant's credibility in disability claims, the ALJ did not question Evans' credibility solely on that basis. The ALJ indicated that he considered the evidence in the record and was not required to identify every piece of evidence in the record when making his findings. However, while the court notes that the ALJ was not required to mention every piece of evidence in the record in assessing Evans' credibility, the ALJ erred in failing to indicate that he has considered the facts in the

record relating to Evans' recent failed attempt at work. Evans testified that he recently attempted assembly line work which was performed at the light exertional level, but had to quit after only three weeks because of his back and knee pain. (AR 73). Evans further testified that even if he performed the assembly line work in a seated position he would not have been able to continue at that job due to his back spasms. (AR 74). The ALJ's conclusion that Evans was capable of performing light work, as well as the ALJ's statement that Evans' reported functional limitations were consistent with a limitation to sedentary work makes it likely that the ALJ did not consider Evans' testimony regarding his recent attempt to work despite his impairments. Therefore, SSA's motion is denied and Evans' motion is granted in part. This matter is remanded to SSA for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, SSA's motion is denied and Evans' motion is granted in part. This matter is remanded to SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 21, 2017